# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY WILLIAMS** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | |
| | : | **NO. 18-5418** |
| **v.** | : | |
| | : | |
| **MELISSA ARNETTE ELLIOTT** | : | |
| **A/K/A MISSY "MISDEMEANOR"** | : | |
| **ELLIOTT,** *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW**, this 6th day of February 2020, upon consideration of the *motion to dismiss Plaintiff's first amended complaint* filed pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) by Defendant Melissa Arnette Elliott a/k/a Missy "Misdemeanor" Elliott ("Elliott"), [ECF 50], the response in opposition filed by Plaintiff Terry Williams, [ECF 61], Elliott's reply, [ECF 64], and the allegations contained in Plaintiff's amended complaint, [ECF 44], it is hereby **ORDERED** that, for the reasons set forth below, Elliott's motion is **GRANTED.** Accordingly, Plaintiff's claims against Elliott are **DISMISSED**, with prejudice.[1]

---

[1]  Plaintiff initially filed this action in Pennsylvania state court and Elliott removed it to federal court. [ECF 1]. After Plaintiff's motion to remand was denied, Plaintiff amended his complaint and replaced several state-law claims with claims of copyright infringement and contributory infringement against Elliott, other recording artists, and several record companies (the "Record Company Defendants"). In the amended complaint, Plaintiff alleges (1) that he and Elliott jointly created several musical compositions (the "Songs") in Plaintiff's Philadelphia studio between the years 1993 and 1996 and (2) that Elliott granted licenses to the other defendants to create derivative works based on the Songs without Plaintiff's consent, which, Plaintiff argues, infringed his ownership interest in the Songs. Further, Plaintiff vaguely refers to an "Agreement" between himself and Elliott that "all profits derived from sale of the songs they created, would be shared equally." However, Plaintiff does not define nor describe the Agreement and proceeds against Elliott *only* on claims of copyright infringement and contributory infringement.

Elliott and the Record Company Defendants separately moved to dismiss. Of note, on January 29, 2020, this Court severed and transferred Plaintiff's claims against the Record Company Defendants to the federal court in Delaware. In her motion to dismiss, Elliott argues that the claims against her should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and failure to state a claim under Rule 12(b)(6). Each ground for dismissal will be briefly discussed.

As to Elliott's argument that personal jurisdiction is lacking, courts have established two forms of personal jurisdiction that comport with constitutional requirements: general jurisdiction and specific jurisdiction. *See D'Jamoos ex rel. Estate of Weingeroff v. Platus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984)). This Court agrees with—and Plaintiff does not challenge—Elliott's argument that general jurisdiction is not supported here; indeed, Plaintiff identifies Elliot as a resident of Georgia, Virginia, and/or Florida.

Specific jurisdiction exists over a defendant when (1) the defendant purposefully directed his or her activities at the forum; (2) the action arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). Here, Plaintiff argues that his "creative relationship" with Elliott, which is alleged to have taken place exclusively in Philadelphia and allegedly led to the creation of the Songs at the center of this case, satisfies the test for specific jurisdiction. In her motion, Elliott acknowledges that the "activities that give rise to Plaintiff's claims," namely "writing and recording music in Plaintiff's home recording studio," occurred in Philadelphia. Based on these factual allegations, this Court finds that these activities, which involved collaborating exclusively, in-person in Pennsylvania, are sufficient to establish specific jurisdiction over Elliott. *Cf. Miller Yacht Sales*, 384 F.3d at 97 (finding specific jurisdiction supported in state where defendants first "receive[d] the property that they eventually misappropriated"). Therefore, Elliott is subject to this Court's personal jurisdiction.

Notwithstanding, Elliott further argues that venue is improper under 28 U.S.C. § 1400, which governs venue in copyright actions. Elliot is mistaken. Section 1400 dictates that "civil actions . . . arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or *may be found*." 28 U.S.C. § 1400 (emphasis added). "A defendant in a copyright action 'may be found' wherever the defendant is subject to personal jurisdiction; thus, 'venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction[.]'" *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 584 (E. D. Pa. 2015) (quoting *Blackburn v. Walker Oriental Rug Galleries*, 999 F. Supp. 636, 638 (E.D. Pa. 1998)); *see also Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). Since this Court has determined that Elliott is subject to this Court's personal jurisdiction, venue in this district is, therefore, proper.

Finally, Elliott argues that Plaintiff's claims against her should be dismissed for failure to state a claim under Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Essentially, Elliott argues that Plaintiff's copyright claims against her are defeated by his own allegations; *to wit*: Plaintiff and Defendant Elliott are co-creators of the Songs at issue, with equal ownership interests in them. As a co-creator, Elliott contends that she could grant licenses to third parties to create derivatives of her joint work without infringing Plaintiff's ownership interest in the Songs. This Court agrees.

In the amended complaint, Plaintiff alleges that Elliott's and his individual contributions to the Songs "merged into inseparable parts" (rendering the Songs "joint works" under 17 U.S.C. § 101), and that he and Elliott are co-owners of copyright in the Songs, 17 U.S.C. § 201(a), with equal "ownership interest" in the Songs. Plaintiff is correct that "[w]hen two or more people create a 'joint work,' they become co-authors and co-owners of the work, each entitled to undivided ownership in the entire work." *Brownstein v. Lindsay*, 742 F.3d 55, 64 (3d Cir. 2014) (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 6.03). Plaintiff is mistaken, however, in his position that as a co-author, Elliott could not grant licenses to third parties to create derivates of the Songs without Plaintiff's consent. Elliott, as a co-owner, has an interest in the Songs that is equal to Plaintiff's. 17 U.S.C. § 201 ("Copyright . . . vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work.");

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

*Marino v. Usher*, 22 F. Supp. 3d 437, 442 (E.D. Pa. 2014) (co-owners are "each entitled to 'undivided ownership'") (quoting Nimmer, *supra*, at § 6.03). Such "equal undivided interest[]" gives "each joint author . . . the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made." *Thomas v. Larson*, 147 F. 3d 195, 199 (2d Cir. 1998). These rights, which Elliott is alleged to have possessed, include the right "to convey non-exclusive rights to the joint work without the consent of [her] co-author." *Brownstein*, 742 F.3d at 68 (citing Nimmer, *supra*, § 6.10). Put simply, since Elliott owns equal copyright in the Songs and "an individual cannot infringe [her] own copyright," *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 522 (9th Cir. 1990), Plaintiff cannot sue Elliott for infringement of their work. *Marino v. Usher*, 673 F. App'x 125, 127 (3d Cir. 2016) ("[t]he district court correctly held that . . . the joint owner of a copyright cannot sue his co-owner for infringement"); *Marino*, 22 F. Supp. 3d at 442 ("It is thus axiomatic that the joint owner of a copyright cannot sue his co-owner for infringement.").

In his response to Elliott's motion, Plaintiff concedes that "the co-owner can enter into non-exclusive licenses/agreements with third parties," but argues that *exclusive* licenses are different. Once again, Plaintiff is mistaken. "If a co-author attempts to convey exclusive rights . . . such an exclusive license [simply] becomes a non-exclusive license." *Brownstein*, 742 F.3d at 68. That is, any license Elliott granted, regardless of her intentions, was, in fact, non-exclusive because Plaintiff's ownership interest could not be extinguished without his consent. Though Plaintiff is correct that Elliott cannot grant *exclusive* licenses without Plaintiff's consent, this does not mean that Elliott cannot unilaterally license their work; it simply renders any such unilateral license, by definition, non-exclusive. *See id.*; *Marino*, 22 F. Supp. 3d at 444 (rejecting plaintiff's argument that "exclusive" license granted by co-authors without consent was void because even purportedly exclusive license was legally non-exclusive) (citing *Brownstein*). Additionally, Plaintiff generally argues that the creation of derivatives of their joint work with Elliott's permission, but without Plaintiff's, constitutes infringement. However, as delineated above, Plaintiff's argument is wrong. *Marino*, 673 F. App'x at 127 ("the joint owner of a copyright cannot sue his co-owner for infringement.").

Lastly, this Court is mindful that a licensing co-author, while spared liability for infringement, "must account to [her] co-author for his fair share of profits from any non-exclusive license." *Brownstein*, 742 F.3d at 68 (citing Nimmer, *supra*, § 6.12). However, "a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law." *Don Johnson Prods., Inc. v. Rysher Entm't, Inc.*, 2009 WL 1615982, at *4 (C.D. Cal. June 8, 2009) (quoting *Oddo v. Ries*, 743 F.2d 630, 633 n.5 (9th Cir. 1984)). This is because the "duty to account does not derive from the copyright law's proscription of infringement, [but] rather . . . from equitable doctrines." *Id.* After carefully reviewing the allegations in the amended complaint and Plaintiff's arguments in response to Elliott's motion, it is clear that Plaintiff seeks relief *only* for infringement, insisting that Elliott is liable for the reproduction of their joint work without Plaintiff's consent. Under the case law cited, Elliot was free to do so. Consequently, Elliot's motion to dismiss is granted.