## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY WILLIAMS,** | : | |
| | : | **Civil Action No. 2:18-cv-05418-NIQA** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MELISSA ARNETTE ELLIOTT A/K/A** | : | |
| **MISSY "MISDEMEANOR" ELLIOTT,** | : | |
| **TIMOTHY ZACHARY MOSLEY A/K/A** | : | |
| **TIMBALAND, ESTATE OF AALIYAH** | : | |
| **HAUGHTON C/O BARRY E** | : | |
| **HANKERSON, ATLANTIC RECORDING** | : | |
| **CORPORATION A/K/A ATLANTIC** | : | |
| **RECORDS, ELEKTRA ENTERTAINMENT** | : | |
| **GROUP, INC. A/K/A ELEKTRA RECORDS,** | : | |
| **WARNER MUSIC, INC. A/K/A WARNER** | : | |
| **MUSIC GROUP, INC., WARNER MUSIC** | : | |
| **GROUP CORPORATION and, RESERVOIR** | : | |
| **MEDIA MANAGEMENT, INC.** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## DEFENDANT MELISSA ARNETTE ELLIOTT'S MOTION TO DISMISS
## <u>PLAINTIFF'S FOURTH AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)6</u>

Defendant, Melissa Arnette Elliott ("**Elliott**" or "**Defendant**"), by and through her undersigned counsel, respectfully submits this memorandum of law in support of her motion, pursuant to Fed.R.Civ.P. 12(b)(6), for an Order dismissing the Fourth Amended Complaint ("**FAC**") [DE 91] filed by Plaintiff Terry Williams ("**Williams**" or "**Plaintiff**") as against Defendant Elliott for failure to state a claim upon which relief can be granted.

## I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff's Fourth Amended Complaint against Defendant Elliott should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) because each of Plaintiff's claims are time-barred under the applicable statutes of limitation on the face of the Fourth Amended Complaint.

In his Fourth Amended Complaint, Plaintiff alleges, as against Defendant Elliott, state law claims in Counts I through IV for (I) Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing and Breach of Fiduciary Duty; (II) Unjust Enrichment/Quantum Meruit; (III) Accounting; and (IV) Constructive Trust (collectively, the "**State Law Claims**"), and a federal law claim in Count V for a Declaratory Judgment of Copyright Ownership (the "**Copyright Ownership Claim**"). All these claims center on the same issue, namely, whether Plaintiff co-authored the lyrics, vocal arrangements and melodies for certain songs that are approximately 25 years old. However, because Plaintiff's co-authorship claims, however contrived, were expressly repudiated more than 20 years ago, Plaintiff's spurious scheme of retroactively manufacturing a fictional co-ownership construct over these works fails as a matter of law, with each of Plaintiff's claims long ago time barred by the statute of limitations.

Accordingly, Plaintiff respectfully requests that the Court dismiss the FAC with prejudice.

## II.   <u>PROCEDURAL HISTORY</u>

On November 14, 2018, Plaintiff, by and through the assistance of his former counsel, the law firm Mattleman, Weinroth & Miller, P.C., commenced an action in the Court of Common Pleas in and for Philadelphia County, styled *Terry Williams v. Melissa Arnette Elliott et al.*, Case Number

001709 ("**State Court Action**"). Plaintiff's initial complaint asserted four causes of action: (i) Breach of Contract / Good Faith & Fair Dealing; (ii) Unjust Enrichment / Quantum Meruit; (iii) an Accounting; and (iv) Constructive Trust (the "**Initial Complaint**"). On December 14, 2018, Defendant Elliott filed a Notice of Removal pursuant to 28 U.S.C. § 1446, removing the State Court Action to the United States District Court for the Eastern District of Pennsylvania, Case No. 1811-1709 (the "**Action**"). [DE 1].

On January 7, 2019, Plaintiff Williams filed a Motion to Remand the Action back to State Court. [DE 12]. On March 1, 2019, the Court denied Plaintiff's Motion to Remand, noting that while each of "Plaintiff's claims appear on their face to be state law claims, the Copyright Act completely preempts state law claims that seek to 'protect (1) an exclusive right in (2) a work within copyright's subject matter.'" [DE 30].

On January 23, 2019, Defendant Elliott filed her Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6). [DE 20]. On May 29, 2019, the Court granted Plaintiff's request to file an amended complaint. Shortly thereafter, on May 31, 2019, the Court granted Plaintiff's counsel's motion to withdraw their representation. [DE 42].

On June 19, 2019, Plaintiff, proceeding *pro se*, filed his First Amended Complaint against all defendants, abandoning his previously-asserted state law claims for breach of contract / good faith and fair dealing, unjust enrichment / quantum meruit, accounting, and constructive trust, and, instead, asserting two new claims for relief for Copyright Infringement against all Defendants and Contributory Infringement solely against Defendant Elliott. [DE 44].

On July 12, 2019, Defendant Elliott filed her Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(3), and 12(b)(6). [DE 50].

On February 6, 2020, the Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, dismissing Plaintiff's claims against Elliott with prejudice. [DE 69].

On February 10, 2020, Plaintiff filed a motion for reconsideration of the Court's Order

granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. [DE 70]. Thereafter, on March 27, 2020, the Court granted, in part, a motion for leave to file a second amended complaint Plaintiff had previously filed on July 25, 2019 [DE 55], clarifying in the Order that:

> Plaintiff has leave to file a second amended complaint but may *only* include claims against the parties that remain in this action and any proposed new party. Plaintiff may not include in his second amended complaint any claim which was previously asserted in this action and which was either transferred and/or dismissed, or which could have been previously asserted against a party whose case has been transferred and/or dismissed from this action. To the extent that Plaintiff seeks in this motion to renew any such claims, that portion of his motion is denied, and any such claims will be considered void.

[DE 73]. On July 27, 2020, Plaintiff filed his Second Amended Complaint. [DE 75].

On August 14, 2020, the Court denied Plaintiff's motion for reconsideration but granted leave for Plaintiff to file a third amended complaint "*only* to assert . . . claims against Elliott (including any state law claims) other than the copyright claims that were previously dismissed from this action" (the "**Order**") [DE 79].

On August 28, 2020, Plaintiff filed his third amended complaint, asserting five (5) causes of action against Defendant Elliott. [DE 80]. The third amended complaint sought to resurrect the same defective state law claims Plaintiff asserted in his Initial Complaint in the State Court Action, which claims Plaintiff voluntarily abandoned more than a year ago.

On November 12, 2020, the Court entered an Order granting Plaintiff's motion for leave to file a fourth amended complaint, noting that Plaintiff's claims against Elliott remain unchanged. [DE 90].

Thereafter, on November 16, 2020, Plaintiff filed his Fourth Amended Complaint, asserting the same assortment of co-ownership claims predicated upon Plaintiff's alleged contributions to some of Elliott's musical works between the years of 1993 and 1996. [DE 91].[1]

---

[1] On the same date, the Court entered an Order denying Elliott's motion to dismiss Plaintiff's Third Amended Complaint as moot in light of Plaintiff's filing of a Fourth Amended Complaint. [DE 92].

III.   **STATEMENT OF RELEVANT FACTS**

    A.    **The Parties**

Plaintiff brings his Fourth Amended Complaint against Defendants Elliott, Timothy Zachary Mosley a/k/a Timbaland ("**Mosley**"), the Estate of Aaliyah Haughton ℅ Barry E. Hankerson ("**The Estate**"), and Blackground Records a/k/a Blackground Enterprises ("**Blackground**") (collectively, the "**Defendants**").

    B.    **The Allegations of the Fourth Amended Complaint**

In the FAC, Plaintiff alleges that throughout the years of 1993 to 1996 (the so-called "**Studio Period**"), he and Defendant Elliott "were equal contributors to the writing of lyrics and music, co-producing a number of songs composed" in his home studio in Pennsylvania. (FAC ¶¶1, 3). Plaintiff stresses that throughout the Studio Period, he and Defendant Elliott worked in his studio for "weeks at a time." (FAC at ¶2).

Plaintiff specifically identifies a song entitled *Heartbroken* as one of the songs purportedly "created equally by Plaintiff and Elliott", specifically "[i]n or around the **summer of 1995**." (FAC at ¶4). (Emphasis supplied). As alleged, both Plaintiff and Elliott made "substantial and valuable contributions to Heartbroken" and Plaintiff's contributions "could have been independently copyrighted". (FAC ¶¶5-6, 8). Plaintiff further alleges that the contributions of Plaintiff and Elliott were "merged into inseparable parts of a musical arrangement and/or sound recording." (FAC ¶9).

Plaintiff alleges that he and Elliott had an agreement "that all profits derived from sale or exploitation of the songs they created, would be shared equally." (FAC ¶10). Without explanation, however, Plaintiff then implausibly alleges that although he and Defendant Elliott "parted ways" in 1996, Plaintiff somehow "did not follow the career of his former partner, Elliott", even though Plaintiff had allegedly just been spending "weeks at a time" purportedly co-authoring musical works with Elliott immediately preceding her rapid ascendance into a world-renowned, five-time Grammy award winning, multiplatinum singer-songwriter and recording and performing artist and

one of the most celebrated female rappers of all time. (FAC ¶12).

Plaintiff further alleges that on August 27, 1996, a song by the name of *Heartbroken* was released and sold to the public, and that this song, named *Heartbroken*, was an "unauthorized derivative of Defendant Elliott and Plaintiff's copywritten song," **which was also called "Heartbroken."** (FAC ¶17). Specifically, Plaintiff claims that a song entitled *Heartbroken* was publicly released on Aaliyah's *One in a Million* album (the "**Aaliyah Album**") on August 27, 1996, which album was "certified double Platinum on June 16, 1997, selling eight (8) million copies worldwide and reaching a peak position of number one (1) on Billboard's US Top Catalog Albums." (FAC ¶¶17, 22). Plaintiff further acknowledges that a song entitled *Heartbroken* and the Aaliyah Album were registered with the copyright office in 1996 and "promoted by way of concert in Philadelphia" in 1997. (FAC ¶17).

Nonetheless, as alleged, Plaintiff did not attempt to contact Elliott **for 20 years**, waiting until 2017 to assert these purported co-ownership claims. (FAC ¶23). Plaintiff now claims that despite the 1996 public release and overwhelming commercial success of Aaliyah's *One in a Million* album, Plaintiff has never received any compensation for his purported "interest" in the song entitled *Heartbroken* on the Aaliyah Album. (FAC ¶27).

Plaintiff separately alleges that three songs "created by Plaintiff and Elliott" were used to "create 4 'Four' Derivative songs on" **the 1994 album** *4 All the Sistas Around da World,* as recorded by American R&B group Sista. (FAC ¶¶18, 33). Specifically, in the FAC, Plaintiff references, "the songs on the SISTA album, namely *Sweat You Down*, *Secret Admirer*, *I Wanna Know*, and *I Wanna Be With U*" (collectively, the "**SISTA Songs**") (collectively, with Heartbroken, the "**Musical Works**" or "**Songs**"). (FAC ¶18). According to Plaintiff, the SISTA Songs are derivatives of "Plaintiff and Defendant Elliott's registered works under 'The What?' collection." (FAC ¶18). As alleged, "Plaintiff had an ownership interest in the songs used to create the derivatives on the Sista album, equal to the ownership interest of Defendant Elliott." (FAC ¶34).

As with "*Heartbroken*", Plaintiff again claims that despite the public release of the Sista album in 1994, Plaintiff has never received any compensation in connection with the album *4 All the Sistas Around da World* or any songs released within. (FAC ¶34). Plaintiff ignores the inherent, striking contradiction within his FAC that he claims to purportedly have been working alongside Elliott for "weeks at a time" between "the years 1993 and 1996", but that he was also oblivious to the public release of four songs in 1994 that he supposedly co-authored. (FAC ¶¶1-2, 31).

Based upon the foregoing allegations, Plaintiff asserts five Counts against Defendant Elliott, labeled as follows: (i) Count I for breach of contract/covenant of good faith & fair dealing/fiduciary duty; (ii) Count II for unjust enrichment/quantum meruit; (iii) Count III for an accounting; (iv) Count IV for constructive trust; *and* (v) Count V for declaratory judgment of copyright ownership (17 U.S.C., *et seq.*). Plaintiff claims that he is entitled to "an equal share of all receipts and/or profits earned from exploiting the joint material", and for declaratory relief that Plaintiff is the co-author of "the lyrics, vocal arrangements and melodies and the sole author of the music compositions embodied within the subject Recordings." (FAC ¶¶ 44, 56, 70).

### C.    Copyright Registrations

On November 1, 1996, Blackground Enterprises registered a copyright for the Album, specifically listing and including a song entitled *Heartbroken*. [DE 50-2 at ¶¶3-4, Ex. "A"]. On November 4, 1996, Blackground registered a copyright for a song entitled *Heartbroken*, identifying Elliott as an author. [DE 50-2 at ¶5, Ex. "B"]. On June 12, 1997, Blackground registered an additional copyright for a song entitled *Heartbroken*, identifying Defendant as an author. [DE 50-2 at ¶6, Ex. "C"]. On November 13, 2001, Blackground registered a copyright for a song entitled *Heartbroken*, identifying Defendant Elliott as an author. [DE 50-2 at ¶7, Ex. "D"].

On or around June 1, 1998, Plaintiff Williams and "Mass Confusion" obtained a copyright registration with registration number PA0000896196 for the song *Ooh, ooh, baby*, performed by Taral (Taral Hicks), that lists Plaintiff Williams and Defendant Elliott as authors of the words and

-6-

music of the song "Ooh, ooh, baby" (the "***Ooh Ooh Baby* Registration**"). *See* Defendant's Request for Judicial Notice ("**RJN**") at Ex. "6".

On April 12, 2017, Plaintiff Williams registered two copyrights for a song entitled *Heartbroken,* one for the underlying music and a second for the sound recording. [DE 50-2 at ¶¶8-9, Exs. "E" - "F"]. In connection with each of Plaintiff Williams' copyright registrations, Plaintiff Williams identified both himself and Defendant Elliott as authors. (*Id.*).

## IV.    STANDARD OF REVIEW

Evaluating a motion to dismiss under FRCP 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000).

However, a well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007), quoting *Twombly*, 550 U.S. at 555.

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Further, ordinarily, a plaintiff need not try to plead around defenses, such as a statute of limitations defense, however, "a Rule 12(b) motion can be utilized when the time alleged in the statement of claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975); see *Williams v. Wexford Health Sources, Inc.*, 199 F.Supp.3d 917, 921, fn. 1 (E.D. Pa. 2016); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2012) (defendant may raise statute of limitations by way of a Rule 12(b)(6) motion if the time bar is apparent on the face of the complaint itself).

In addition, courts routinely grant motions to dismiss under Rule 12(b)(6) where the allegations of the complaint are inconsistent with the existence of a viable claim on the part of the plaintiff. *Suthers v. Amgen Inc.*, 441 F.Supp.2d 478, 480 (S.D.N.Y. 2006); citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006); *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *Tenet v. Doe*, 544 U.S. 1 (2005); see also *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 665 (7th Cir. 2004) ("[t]his court is not obligated by the standard of review to disregard factual allegations that undermine a plaintiff's claim"). "Even if some allegations support a claim, if other allegations negate the claim on its face, then the pleading does not survive the 12(b)(6) review. *Thornton v. Ditech Fin. LLC*, No. 2:18-CV-156, 2018 WL 4408979, at *3 (S.D. Tex. Sept. 17, 2018). As the Third Circuit has made clear:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Jones v. Bock*, 549 U.S. 199, 215 (2007); *citing Leveto v. Lapina,* 258 F.3d 156, 166 (3d Cir. 2001).

///

///

## V.    ARGUMENT:  PLAINTIFF'S CLAIMS ARE TIME BARRED

### A.    All Claims Are Barred by the Copyright Act's Three-Year Statute of Limitations

Plaintiff's State Law Claims turn on the same factual and legal question as Plaintiff's Copyright Ownership Claim: whether Plaintiff Williams co-authored the lyrics, vocal arrangements and melodies for certain songs that are over twenty-five (25) years old.

Mirroring various Copyright Code terms and general principles, Plaintiff alleges that:

- Defendant Elliott and Plaintiff each made a "substantial contribution" to the Song as a writer, musical engineer and producer. (FAC ¶¶5-6);

- Plaintiff's "individual contribution" to the Songs was significant and "could have been independently copyrighted." (FAC ¶8); *and*

- Plaintiff and Defendant Elliott prepared the lyrics, vocal arrangement and melody contributions with the knowledge and intention that they would be merged with the contributions of Williams (music) as "inseparable or interdependent parts of a unitary whole" (FAC ¶67).

Based upon these allegations, Plaintiff asserts that Defendant Elliott breached her agreement to share the profits from their "joint works", was unjustly enriched and that a constructive trust and an accounting should thereby be imposed, while further seeking a judicial determination that Plaintiff and Defendant Elliott are co-owners of the subject Recordings. (FAC ¶¶ 56, 70).

Despite attempting to assert the State Law claims, Plaintiff only makes one claim here, namely, that he is a co-owner of the Songs. Consequently, all his claims are subject to the statute of limitations provided in the Copyright Act for copyright ownership claims. See *Dodson v. JRL Music, Inc.*, 684 Fed.Appx. 7, 8 (2d Cir. 2017) (where plaintiff's ownership claim was untimely, plaintiff's state law claims for, among other things, an accounting, were also untimely); *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) ("plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration"); *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) ("[w]here, as here, the ownership claim is time-barred, and ownership is the dispositive

issue, <u>any</u> attendant infringement claims must fail").

The Copyright Act provides that all civil actions must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). This is a claim for co-ownership and "claims of co-ownership, as distinct from claims of infringement," **accrue only once**, "when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Id.; citing Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1230–31 (9th Cir. 2000) ("[Where] creation rather than infringement is the gravamen of an authorship claim, the claim accrues on account of creation, not subsequent infringement and is barred three years from 'plain and express repudiation' of authorship").

As such, a claim for copyright ownership accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014 (VSB), 2018 WL 4680989, at *4 (S.D.N.Y. Sept. 28, 2018); *citing Merchant*, 92 F.3d at 56. Moreover, an "ownership claim accrues only once, when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Kwan*, 634 F.3d at 228.

In deciding when Plaintiff was on inquiry notice of his claims depends on two determinations: (1) when a cause of action first arose, and (2) when he should have known that a cause of action had arisen. *Zuill*, 80 F.3d at 1371 (9th Cir. 1996), as amended (June 14, 1996). In this Circuit, the express repudiation rule governs the first determination and the discovery rule governs the second. *Brownstein v. Lindsay*, 742 F.3d 55, 70 (3d Cir. 2014).

### 1.   First Determination: Express Repudiation

This express repudiation rule spawned from the Ninth Circuit case of *Zuill*, 80 F.3d 1366 (9th Cir. 1996); *Brownstein*, 742 F.3d at 70 (3d Cir. 2014). Similar to the discovery rule, the express repudiation rule looks for evidence that a co-author has acted adversely to the plaintiff's status as a co-author, thereby putting plaintiff on notice of his claim. (*Id.*).

Here, Plaintiff Williams has expressly alleged that, more than 22 years before Plaintiff initiated this Action, a song entitled *Heartbroken* was "released and sold to the public on the studio album of Aaliyah titled *One In a Million*, on August 27, 1996", and that **during the same time**, Plaintiff was purportedly working with Defendant Elliott on a song **of the exact same title**. (FAC ¶¶1, 2, 4, 17, 22). Plaintiff alleges that "Defendants have received monetary compensation" in connection with the song *Heartbroken* (FAC ¶16) and further alleges that the Aaliyah Album, upon which the song *Heartbroken* appears, was "certified double Platinum on June 16, 1997, selling eight (8) million copies worldwide and reaching a peak position of number one (1) on Billboard's US Top Catalog Albums." (FAC ¶22). (Emphasis supplied). Plaintiff's FAC also includes the SISTA Songs, publicly released in 1994, which is also the exact same time period during which Plaintiff claims to purportedly have been working with Defendant Elliott, and well prior to the time Plaintiff claims that he and Elliott "parted ways" in 1996. (FAC ¶¶1, 12, 18).

Taken together, Plaintiff has implausibly alleged that around the same exact time he purportedly worked extensively with Defendant Elliott on creating a song entitled "*Heartbroken*", a derivative of this same song by **the same exact name** (*Heartbroken*), in which Plaintiff purportedly maintained some ownership interest by virtue of being a co-author, was being openly and notoriously sold to the public starting in 1996 and moreover was featuring Defendant Elliott as not only a writer on that song, but on seven more songs on the same double platinum Aaliyah Album, rapidly reaching vast commercial success and fame within a year. Plaintiff concedes that despite its public release and overwhelming commercial success since 1996, Plaintiff has never received any compensation in connection with the song *Heartbroken*. (FAC ¶27).

Moreover, Plaintiff is likewise alleging, that well *prior* to the parties parting ways, Defendant Elliott, as an active member of the all-female American R&B group known as Sista, released a studio album in 1994 entitled 4 *All the Sistas Around da World* (the "**Sista Album**") in which Plaintiff purportedly maintained some ownership interest by virtue of being a co-author.

(FAC ¶¶31-34). Plaintiff alleges that the Sista Album, including the purported infringing derivative works, were "released by the group SISTA in 1994" and that "Defendant Elliott was a member of the group SISTA". (*Id.*).[2]

In fact, as the public copyright registration for the single *Brand New* from the Sista album *4 All the Sistas Around Da World* reflects, the album was created in 1994, first publicly released on or around July 24, 1994 and registered with the copyright office on or around July 11, 1995. (RJN at Ex. "5"). Finally, just like the song *Heartbroken* on the Aaliyah Album, Plaintiff alleges that Defendant Elliott did not provide any payments to Plaintiff and Plaintiff did not receive any credit for the "Songs" [Musical Works]. (FAC ¶34). Plaintiff therefore concedes that despite the public release of the Sista album in 1994, Plaintiff has never received any compensation in connection with the album *4 All the Sistas Around da World* or any songs released within. (FAC ¶34).

Accordingly, as Plaintiff has confirmed he was never paid anything on any of the Songs and was well aware (or certainly should have been aware with due diligence) of their public release and exploitation by 1997, any fictional copyright co-ownership claim Plaintiff is now attempting to retroactively manufacture approximately 25 years later had already been expressly repudiated at such time.

The First Circuit's decision in *Santa–Rosa v. Combo Records,* 471 F.3d 224 (1st Cir. 2006), is highly instructive on this point. In *Santa-Rosa*, the First Circuit held that a claim for ownership accrued when the defendant record label failed to pay royalties to the plaintiff, the purported copyright owner. (*Id.* at 227–28). The court held that because the defendant was openly selling the plaintiff's work and not paying him royalties, the defendant repudiated the plaintiff's copyright:

> [W]e cannot think of a more plain and **express repudiation of co-ownership** than the fact that Combo **openly, and quite notoriously**, sold Santa Rosa's records

---

[2] In a subsequent conspicuous attempt to plead around the statute of limitations, Plaintiff directly contradicts this allegation by later passively alleging, without any direct knowledge, that it is "reported that the Sista Album was 'shelved' or never released in 1994." (FAC ¶33).

without providing payment to him: according to documents provided by Santa Rosa, at least 1,140 of the recordings in dispute were sold during the six month period between January and June of 2000, almost four years before Santa Rosa filed suit in May 2004. Likewise, it is hard to believe that a singer of Santa Rosa's stature would have been unaware that Combo Records was selling his recordings and thus claiming ownership over them until three years before this action was commenced.

*Id.* at 228. (Emphasis supplied).

Similarly, the Second Circuit has also ruled that such claims accrue "when alleged co-owners learn they are entitled to royalties that they are not receiving." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013).

Here, as alleged by Plaintiff, there is no dispute that the alleged injury occurred, at the latest, on (i) September 20, 1994 when the Sista Album was "released by the group SISTA"; or (ii) August 27, 1996 when *Heartbroken* was released and sold to the public on the Aaliyah Album (FAC ¶¶ 17, 31). Plaintiff further alleges that both Defendant Elliott and Defendant Mosley were credited as producers and guest vocalists on the Aaliyah Album, and that "Elliott and Defendants have received monetary compensation as a result of the creation of the derivatives to Plaintiff and Elliott's joint works, and or the transfer or assignment of Copyright or sale of Songs." (FAC ¶¶ 16, 22,). Plaintiff also alleges that the Aaliyah Album was certified "double Platinum on June 16, 1997, selling eight (8) million copies worldwide and reaching a peak position of number one (1) on Billboard's US Top Catalog Albums." (FAC ¶22).

Once again, notwithstanding the resounding success and widespread acclaim of the Aaliyah Album, coupled with Defendants' conspicuous involvement in the Album's creation, Plaintiff claims that he was not compensated by any of the Defendants. (FAC ¶27). Notably, in *Santa–Rosa*, public sales of a few thousand copies of an album were enough to put the plaintiff on notice. Certainly, collective sales of well over 8 million on the Aaliyah Album, the single *Brand New* and the Sista Album are sufficient to have put Plaintiff on notice that the Songs had been released and

that he was not being paid, thereby expressly repudiating his alleged "ownership".[3]

In addition, public records reflect that on November 1, 1996, the record company defendant, Blackground Enterprises, registered multiple copyrights for the Aaliyah Album and the song entitled *Heartbroken*, specifically identifying Defendant as an author. (RJN at Ex. "1"). Likewise, on July 11, 1995, Elektra Records registered a copyright for the Sista Album's single, *Brand New*. (RJN at Ex. "5").

Accordingly, in the totality, it is resoundingly clear from the face of the FAC that, well over 20 years ago, there was an express repudiation of Plaintiff's assertion that he was somehow a "co-author" of the song *Heartbroken* on the Aaliyah Album or of the SISTA Songs. The mass marketing and sale of the number one album in the United States which purportedly embodies a song **of the same exact title Plaintiff now claims to have co-authored** without paying any royalties or other compensation to Plaintiff clearly constitutes an express repudiation. Similarly, the public release of the Sista Album during the **exact purported time** Plaintiff and Defendant worked together "for weeks at a time" does as well. *Santa–Rosa*, 471 F.3d at 228; see also *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016-17 (10th Cir. 2013) ("[a]wareness that one is not being credited in the same manner as other authors starts the statute of limitations running for copyright ownership claims," and "[a]wareness that one is not receiving royalties also puts one on notice of the basis for a copyright co-ownership claim"); *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik*, 510 F.3d 77, 90-91 (1st Cir. 2007) (upholding determination that joint authorship claims barred by statute of limitations where there was open and notorious exploitation of the subject works and

---

[3] Of course, although Plaintiff would have been placed on notice had he actually co-authored these works, in actuality, there was no notice on which to place Plaintiff as the entirety of these approximately 25 year old sham claims are an artifice Plaintiff's "representative" contrived in seeking to misuse the judicial process as a mechanism to extract money out of Defendant Elliott. Although any reasonable person that maintained these purported claims would have immediately known of them, at the latest, in 1997, distilled to their core, the entirety of Plaintiff's claims are a transparent charade opportunistically fabricated twenty-five years after Plaintiff and Defendant Elliott "parted ways". [DE 19 at 8-11].

purported co-author knew she was not receiving any payments).

### 2. Second Determination: The Discovery Rule

Having established Plaintiff's notice of an express repudiation of his joint authorship claim, the next determination is whether "that injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable to expect the plaintiff to discover the injury." *Disabled in Action of Penn. v. Se. Penn. Transp. Auth.*, 539 F.3d 199, 214 (3d Cir. 2008).

The discovery rule is a general inquiry notice rule, which states that a claim accrues when the plaintiff discovers or should have discovered with "due diligence" that his rights had been violated. *William A. Graham Co. v. Haughey*, 568 F.3d 425, 437 (3d Cir. 2009). In *William A. Graham Co.*, this Circuit held that a plaintiff would be able to discover his injury with due diligence if there were "storm warnings" which gave the plaintiff "sufficient information of possible wrongdoing to place [him] on inquiry notice ... of culpable activity." *Id.* at 438 (internal quotation marks omitted). The rule also holds that the clock starts running once a cause of action arises since a plaintiff cannot experience "storm warnings" of a violation until his rights have been violated. *Id.* at 438–39; *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) (adding that the "test for 'storm warnings' is an objective one, based on whether a "reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning").

While Defendant bears the initial burden of demonstrating storm warnings, "the burden shifts to [Plaintiff] to show that [he] exercised reasonable due diligence and yet [was] unable to discover [his] injuries." *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006); quoting *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001). "Whether the plaintiff exercised reasonable diligence is both a subjective and objective inquiry." *Benak*, 435 F.3d at 401 (3d Cir. 2006); quoting *In re Daimlerchrysler AG Sec. Litig.*, 269 F.Supp.2d 508, 513 (D. Del. 2003).

The recent case of *Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014, 2018 WL

4680989 (S.D.N.Y. Sept. 28, 2018) is highly instructive. In *Cole*, the plaintiff was the road manager for the artist Bob Marley who wrote the words and the music to the songs "War" and "Natty Dread". (*Id.* at *1). Despite the plaintiff's clear co-authorship of these two compositions, and without the plaintiff's knowledge, the copyright registrations listed Tuff Gong Music as the sole author and represented that the copyrights were "work for hire." (*Id.*). After they were copyrighted, the compositions were commercially released for sale. (*Id.* at *5). For the first twenty years of the compositions' commercial release, the plaintiff did not receive any royalties. (*Id.*).

In determining that the plaintiff's claim of co-authorship was time-barred, the court in *Cole* reasoned that although copyright registration, on its own, is "not an effective repudiation" sufficient to provide "reasonable notice" to a copyright ownership claimant, the copyright registration, ***when considered together*** with plaintiff's failure to receive royalties despite the widespread distribution and exploitation of the compositions, meant that the plaintiff was on notice of his claims at least as of the 1970s or 1980s, rendering his action long ago time barred.

Here, just as in *Cole*, and as specifically alleged by Plaintiff, (i) the song *Heartbroken* on the Aaliyah Album was widely distributed, selling eight (8) million copies worldwide and reaching a peak position of number one (1) on Billboard's US Top Catalog Albums (FAC ¶22); (ii) the Aaliyah Album (including *Heartbroken*) were registered with the Copyright Office in 1996, identifying persons other than Plaintiff as the sole authors; (RJN at Ex. "2"); and (iii) Plaintiff did not receive any royalties in connection with the sale of any of the Songs. (FAC ¶¶27, 34).

All these elements, taken together, place Plaintiff Williams on notice of his claim in 1996 or at the very latest 1997. As Plaintiff alleges, the song he allegedly co-authored (*Heartbroken*) has **the same name** of the song as released that sold over 8 Million copies and was number 1 on the Billboard charts, specifically the song *Heartbroken* on the Aaliyah Album. Accordingly, Plaintiff's claim of co-authorship is time-barred. 17 U.S.C. § 507(b).

Plaintiff, even after having had **four** previous opportunities to amend his pleadings, and now

on his **fifth** pleading, can only allege the following facially implausible allegation to avoid the statute of limitations: that after parting ways in early 1996, Plaintiff did not "**follow the career of his former partner, Defendant Elliott**." (FAC ¶12). In other words, in a transparent attempt to avoid the statute of limitations, Plaintiff is attempting to claim that, after purportedly working alongside Defendant for "weeks at a time" and allegedly co-authoring a song entitled *Heartbroken* that was featured on the number 1 selling album in the United States, Plaintiff was somehow oblivious to all of this and generally oblivious to the career trajectory of his alleged former songwriting partner who would soon become the only female hip-hop artist with six platinum-certified albums. *See Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1148-49 (N.D. Cal. 2007) ("entirely unreasonable" for songwriter and producer to try to avoid statute of limitations by claiming to have commenced a "Yoga path only to reemerge from electronic isolation twenty years later and thereafter commence suit for copyright infringement").

Plaintiff's transparently fabricated claim that he did not "follow the career of his former partner, Defendant Elliott" after 1996 is further contradicted by Plaintiff's judicial filings in a parallel Federal Court proceeding. Specifically, on August 6, 2020, after the Court had entered the February 6, 2020 Order dismissing Plaintiff's First Amended Complaint for copyright infringement with prejudice and had entered the March 27, 2020 Order on Plaintiff's motion for leave prohibiting Plaintiff from filing any new claims against Defendant Elliott, but before the Court entered the August 14, 2020 Order granting Plaintiff leave to file a third amended complaint, Elliott filed a declaratory judgment action in the United States District Court for the Southern District of Florida entitled *Melissa Arnette Elliott, professionally known as "Missy Elliott" v. Terry Williams*, Case No. 9:20-cv-81280-RKA (the "**Florida Action**").[4]

---

[4] Defendant Elliott seeks a declaratory judgment in the Florida Action that Elliott is the sole author of her own lyrics, vocal arrangements and melodies underlying and embodied within at least thirty (30) **unpublished** recordings Plaintiff Williams claims are part of his "catalog", none of which are

Plaintiff Williams has since stated on the record in the Florida Action that he received credit on a musical work with Defendant Elliott in 1997. Specifically, in the Florida Action, Williams has filed a motion to dismiss in response to Elliott's initial complaint, wherein Williams paradoxically alleged that Elliott's declaratory judgment action is **time-barred** because she was on notice since 1997 of Plaintiff Williams' ownership claims. Specifically, Williams represented as follows:

> Even prior to my communication with plaintiff's counsel in 2017, in 1997, Motown published mine and the plaintiff's joint work "Ooh Ooh baby, to Taral Hicks first album – This Time (Exhibit A). Credit is given to me as a writer of the song along with the plaintiff. The plaintiff is mispresenting to the court in 2020 that she never intended to have any joint works with me (Plaintiff's complaint paragraph 60), yet in 1997, the plaintiff and I are listed on published song credits as writers of the song. If the plaintiff wanted to contest joint authorship of the works in my collection, which includes Ooh Ooh Baby, as is evidence by plaintiff's own Exhibit A to the complaint, then she should have done that within 3 years of when Ooh Ooh Baby was registered by Motown (2000) and she learned her copyrights were being violated.

[RJN at Ex. "12"]. Clearly, Plaintiff Williams' claims in his FAC that he did not "follow the career of his former partner Elliott" after early 1996 [FAC at ¶12] are deliberately false, as he was both working on music and obtaining credits on songs with Defendant Elliott **through 1997**. Plaintiff claims that despite its public release and overwhelming commercial success since 1996, Plaintiff has never received any compensation in connection with the song *Heartbroken* or the album *One in a Million*. [FAC at ¶27].[5] Further compounding the manifest implausibility afflicting Plaintiff's

---

the subject-matter of this proceeding. Although one of the thirty (30) songs in this unpublished "catalog" is named "Heartbroken", it is not the *Heartbroken* that was publicly released on Aaliyah's certified double Platinum *One in a Million* album on August 27, 1996, which is the subject matter of Plaintiff's action herein. Rather, it is a recording of Elliott practicing her independently created preexisting lyrics, vocal arrangement and melodies for the song Elliott wrote, entitled "*Heartbroken*", alongside a preexisting instrumental.

[5] The Third Circuit has made clear that a fact expressly conceded in a complaint constitutes a judicial admission and is binding on the plaintiff. See *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008) ("[a]lthough [Plaintiff]'s attempt to salvage its unjust enrichment claim now requires that it take a contrary position, the allegation in the Amended Complaint is a binding judicial admission"); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n. 20 (3d Cir.

perfunctory attempt to sidestep his facially time-barred claims, Plaintiff Williams filed the *Ooh, Ooh, Baby* Registration **in or around 1997 or 1998** as well, listing Defendant Elliott (who he now claims he was "not following") as an author on that copyright. [RJN at Ex. "6"].

It is simply inconceivable that having meticulously ensured he was credited, **<u>along with Defendant Elliott</u>**, on the *Ooh, Ooh, Baby* Registration he filed in 1998, Williams would contemporaneously ignore not only Defendant Elliott's career, but the 2x Platinum hit *Heartbroken* he now claims to have co-authored **<u>just one year prior</u>**. The truth is much simpler. Williams was clearly aware of the song *Heartbroken* on the Aaliyah Album but made no claim for royalties or credits at that time, as he did not actually contribute to the song in any respect. Now, approximately 25 years later, and apparently in an ill-conceived bid to obtain funds to which he is not entitled, Williams has contrived these fanciful claims, preposterously asserting that he simply was unaware of the song *Heartbroken* on the Aaliyah Album until 2017. In addition to being facially implausible, Williams' own litigation and copyright filings confirm otherwise.

Ultimately, it is patently unreasonable for Williams to now, approximately 25 years later, claim without any explanation to have just "discovered" that a song he allegedly co-authored was publicly released in 1996. Plaintiff, as a co-author, "knows that he or she jointly created a work from the moment of its creation". *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996). If countenanced, Plaintiff's "willful blindness" theory would effectively eviscerate longstanding Pennsylvania law providing that "a cause of action accrues, and the statute of limitations begins to run, when a plaintiff is aware, **<u>or should be aware</u>**, of the existence and source of the claimed injury." *Altieri v. Concordville Motor Car, Inc.*, No. 17-4447, 2018 WL 878368, at *3 (E.D. Pa. Feb. 14, 2018) (Quiñones Alejandro, J.). (Emphasis supplied).

---

2006) ("[j]udicial admissions are concessions in pleadings or briefs that bind the party who makes them"); *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("[j]udicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them").

###      3.      Equitable Tolling

It is well established that "plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Merchant*, 92 F.3d at 56 (2d Cir. 1996).

In certain "extraordinary circumstances," a court may excuse a plaintiff's failure to comply with the applicable statute of limitations under the doctrines of equitable estoppel or equitable tolling. *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997). For a litigant to be entitled to equitable tolling, they must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *D.J.S.-W v. U.S.*, 962 F.3d 745, 752 (3d Cir. 2020), quoting *Menominee Indian Tribe of Wisconsin v. U.S.*, 136 S.Ct. 750, 755 (2016). "The two components are distinct elements, both of which the litigant must satisfy. And to meet the extraordinary-circumstances element, the litigant must show that the circumstances were extraordinary and beyond his control." *D.J.S.-W*, 962 F.3d at 752 (3d Cir. 2020). Here, it is beyond peradventure that Plaintiff Williams did not remotely exercise even a modicum of due diligence sufficient to meet the required equitable-tolling standard.

Although a plaintiff must meet both prongs of the equitable-tolling test, in addition to not diligently pursuing his purported claims, Plaintiff also cannot demonstrate any extraordinary circumstances that stood in his way and prevented timely filing. For instance, Plaintiff does not allege that he knew of his cause of action, but misconduct on the part of the Defendant caused him to delay in bringing suit. *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). To invoke this doctrine, "a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." (*Id.*). The defendant's misconduct must amount to "egregious wrongdoing." *Netzer*, 963 F. Supp. at 1316. "A plaintiff seeking to avoid the bar of

limitations has the burden of both pleading and ultimately proving fraudulent concealment" as well as of "demonstrating the exercise of due diligence." (*Id.*).

Here, Plaintiff Williams fails to allege any affirmative misrepresentation by Defendant Elliott. To the contrary, Plaintiff expressly alleges that in the year 1996, during the same time Plaintiff was purportedly working with Defendant, a song **of the same exact title** Plaintiff now claims to own was publicly released on an album certified double Platinum, selling eight (8) million copies worldwide. (FAC ¶¶19-22). In addition to these fatal internal inconsistencies within his FAC, Plaintiff also expressly alleges in the Florida Action that one year after Aaliyah's *Heartbroken* was publicly released, Plaintiff was credited on a song with Defendant Elliott. (RJN at Ex. "12", pgs. 2-3). Based upon Plaintiff's Florida Action, it is further clear that in 1998, over two years after Plaintiff summarily claims to have ceased following the career of Defendant Elliott, Plaintiff filed a copyright – the Ooh, Ooh, Baby Registration – naming him as a co-author with Defendant Elliott. [RJN at Ex. "6"]. No affirmative concealment or misrepresentation is alleged, nor could it be, as Plaintiff's claims relate to public works he clearly knew or should have known about. Similarly, having waited more than twenty (20) years to bring these patently frivolous claims, Plaintiff Williams cannot demonstrate that he has been pursuing his rights diligently or that some extraordinary circumstance stood in his way and prevented timely filing. *D.J.S.-W*, 962 F. 3d at 752 (3d Cir. 2020).

Because there is no basis to equitably toll the statute of limitations on Plaintiff's claims, Defendant Elliott respectfully requests that the Court dismiss Plaintiff's claims as time-barred.

### B.    Plaintiff's State Law Claims Are Similarly Time Barred by their Respective Statute of Limitations

For all the reasons stated above, the outcome will also be the same if the Court applies the individual statutes of limitation for each State Law Claim.

///

1.     **Breach of Contract**

In Pennsylvania, the statute of limitations for bringing a breach of contract action is four years, whether the contract is in writing or verbal. *See* 42 Pa. Cons. Stat. § 5525. Plaintiff's breach of contract claim accrued when the alleged contract was breached. *GAI Consultants, Inc. v. Homestead Borough*, 120 A.3d 417, 423-24 (Pa. Cmwlth. 2015) ("[i]n general, for a claim based upon contract, the cause of action accrues and the statute of limitations begins to run on the date that the contract is breached"). As such, the four year statute of limitations for breach of contract began to run from the time the contract Williams alleges existed was breached. See *Packer Soc'y Hill Travel Agency, Inc. v. Presbyterian Univ. of Penn. Med. Ctr.,* 430 Pa.Super. 625, 631 (1993) ("[a]s observed by this court, the statute of limitations begins to run on a claim from the time the cause of action accrues. In general, an action based on contract accrues at the time of breach").

Plaintiff alleges that Elliott breached a contract with Plaintiff when "Defendant Elliott acted without Plaintiff's knowledge and/or failed to share in all benefits conferred to her by the recreation, transfer, assignment, and or sale of the Song to a third party." (FAC at ¶49). Plaintiff also alleges that the "song 'Heartbroken' on the Aaliyah, 'One in a Million' album…which is an unauthorized derivative of Elliott and Plaintiff's copywritten song 'Heartbroken' '1995' … was released and sold to the public on the studio album on August 27, 1996. The album was promoted by way of concert in Philadelphia, PA on August 30, 1997." (FAC at ¶17).

As such, Plaintiff Williams' breach of contract claim accrued on August 27, 1996 and has been time barred for just over twenty (20) years, since August 27, 2000.

2.     **Breach of Fiduciary Duty**

Plaintiff's claim for breach of fiduciary duty is governed by a two-year limitations period. *See* 42 Pa. Cons. Stat. § 5524(7). Under the general formulation of the discovery rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. See *Evans v. Sodexho*, 946 A.2d 733, 738 (Pa. Super. Ct. 2008).

For Plaintiff's breach of fiduciary duty claim, Plaintiff alleges that a "valid contract existed between Plaintiff and Elliott, as aforesaid, and Elliott has a duty to account to her co-owner for any profits derived from exploitation of her and the Plaintiff's joint works." (FAC at ¶39). Plaintiff also alleges that the "song 'Heartbroken' on the Aaliyah, 'One in a Million' album … which is an unauthorized derivative of Elliott and Plaintiff's copywritten song 'Heartbroken' '1995' … was released and sold to the public on the studio album on August 27, 1996. The album was promoted by way of concert in Philadelphia, PA on August 30, 1997." (FAC at ¶17).

As such, Plaintiff Williams' breach of fiduciary duty claim accrued on August 27, 1996 and has been time barred for just over twenty-two (22) years, since August 27, 1998.[6]

### 3.    Unjust Enrichment / Quantum Meruit

The statute of limitations for Plaintiff's unjust enrichment/quantum meruit claims is four years (42 Pa.C.S.A. § 5525(4)) and began to accrue as of the date on which the relationship between the parties terminated. See *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997). Plaintiff pleads that "in early 1996, Plaintiff and Elliott parted ways and have not been contact since that time. Plaintiff did not follow the career of his former partner Elliott." (FAC at ¶12). Accordingly, Plaintiff's unjust enrichment/quantum meruit claims have been time barred since, at the latest, 2001.

### 4.    Constructive Trust/Accounting

In Pennsylvania "[n]o action (shall) be maintained to enforce, any implied trust as to realty, but within five years after such trust accrued" (*Silver v. Silver*, 219 A.2d 659, 662 (1966)) and an action for an accounting at law, being on the same plane, in practice, as an action in assumpsit

---

[6] In addition, Plaintiff fails to set forth any facts sufficient to establish that a fiduciary relationship could exist between Plaintiff and Defendant Elliott. To the contrary, it is well established that alleged co-owners of a copyright do not have a fiduciary duty to each other based upon that co-ownership itself. See *Mills v. Cottress*, No. 04 Civ. 5562, 2006 WL 3635325, at *5 (S.D.N.Y. Dec. 8, 2006), citing *Margo v. Weiss*, 96 CIV. 3842, 1998 WL 2558, at *9 (S.D.N.Y. Jan. 5, 1998) (no breach of fiduciary duty were plaintiff's claims were "premised on the unsupported assumption that co-authors owe fiduciary duties to one another").

(*Miller v. Belmont Packing & Rubber Co.*, 110 A. 802, 806 (Pa. 1920); *Duggan v. Duggan*, 140 A. 342, 344 (Pa. 1928)), is subject to the same six-year limitation. *Guldin v. Lorah*, 21 A. 504 (Pa. 1891); *Ebbert v. Plymouth Oil Co.*, 34 A.2d 493, 496 (1943).

Plaintiff also alleges that the "song 'Heartbroken' on the Aaliyah, 'One in a Million' album … which is an unauthorized derivative of Elliott and Plaintiff's copywritten song 'Heartbroken' '1995' … was released and sold to the public on the studio album on August 27, 1996. The album was promoted by way of concert in Philadelphia, PA on August 30, 1997." (FAC, at ¶17).

Accordingly, Plaintiff's claims for constructive trust and accounting have been time barred since, at the latest, August 27, 2002.

## VI.    **CONCLUSION**

Because it is clear from the face of Plaintiff's Fourth Amended Complaint that Plaintiff filed his claims more than twenty years after the express repudiation of Plaintiff's illusory co-ownership claims, and because each of the remedies Plaintiff seeks flow from this fanciful declaration of co-ownership, all of Plaintiff's claims are time-barred and therefore must be dismissed.

For the foregoing reasons, Defendant Elliott respectfully requests that the Court enter an Order dismissing Plaintiff's Fourth Amended Complaint as against Defendant Elliott in its entirety with prejudice.

**DATED**: November 30, 2020                    Respectfully submitted,

                                        **LEADER BERKON COLAO &**
                                        **SILVERSTEIN LLP**

                                         /s/ Jacob F. Kratt, Esq.

                                        Joseph G. Colao (PA Bar No. 312870)
                                        Jacob F. Kratt (PA Bar No. 316920)
                                        1515 Market Street, Suite 1200
                                        Philadelphia, PA 19102
                                        (215) 755-0455
                                        jkratt@leaderberkon.com

**SINGH, SINGH & TRAUBEN, LLP**

Michael A. Trauben
(admitted *pro hac vice*)
400 South Beverly Drive, Suite 240
Beverly Hills, California 90212
(310) 856-9705
mtrauben@singhtraubenlaw.com

***Attorneys for Defendant***
MELISSA ARNETTE ELLIOTT