IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRY WILLIAMS** | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 18-5418 |
| **v.** | : | |
| | : | |
| **MELISSA ARNETTE ELLIOTT** | : | |
| a/k/a MISSY "MISDEMEANOR" | : | |
| **ELLIOTT,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    AUGUST 26, 2024

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Terry Williams ("Williams"), proceeding *pro se*, commenced this civil action against Defendant Melissa Arnette Elliott a/k/a Missy "Misdemeanor" Elliott ("Elliott") asserting claims premised on Williams' assertion that he is the uncredited co-author of multiple of Elliott's songs that were later used in other artists' derivative works.[1]  Specifically, Williams asserts claims for breach of contract and fiduciary duty (Count I), unjust enrichment/quantum meruit (Count II), an accounting of profits (Count III), constructive trust (Count IV), and declaratory judgment of copyright ownership (Count V).  (*See* Fourth Am. Compl., ECF 91).

Before this Court are Williams' and Elliott's (the "parties") cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (ECF 269, ECF 270).  The parties oppose each other's motions.  (ECF 271, ECF 272).  The issues raised in the cross-

---

[1]  In the Fourth Amended Complaint (the "Operative Complaint"), Williams also asserts claims against Timothy Mosley a/k/a Timbaland, the Estate of Aaliyah Haughton, and Blackground Records a/k/a Blackground Enterprises.  Notably, Defendant Timothy Mosely was terminated from this action on July 23, 2021.  (*See* ECF 144, 145).  Williams' claims against the Estate of Aaliyah Haughton, and Blackground Enterprises are not the subject of the parties' cross-motions for summary judgment or this Opinion.

motions for summary judgment have been fully briefed and are ripe for disposition.[2]  For the reasons set forth, Elliott's motion for summary judgment is granted *in part*, and Williams' motion for summary judgment is denied, in its entirety.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  The facts relevant to the underlying motions are summarized as follows:[3]

>   Elliott is a singer, rapper, songwriter, and music producer.  During the relevant time period — 1993 to 1996 — Williams was a music producer who owned a home recording studio that Elliott frequented.[4]  During this time period, Williams and Elliott created thirty-four unpublished songs (the "Unpublished Songs").[5]
>
>   Between 1993 and 1995, Elliott was a member of the R&B musical group "SISTA."  In 1994, SISTA released its album "*4 All the Sistas Around Da World*."  The album's lead single was titled "*Brand New*,"[6] and the album also included songs "*Sweat You Down*," "*Secret Admirer*," "*I Wanna Know*," and "*I Wanna Be With U*" (collectively, the "SISTA Songs").  After the album's release, it was shelved but then re-released on digital and streaming platforms in May 2017.
>
>   Sometime between 1993 and 1996, Elliott collaborated with musical artist Aaliyah on a song entitled "*Heartbroken*" which was released on Aaliyah's album

---

[2] This Court also considered the parties' replies, (ECF 275, ECF 281), and Williams' sur-reply, (ECF 278).

[3] These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any facts are disputed, such disputes will be noted and, if material, will be construed in the non-movant's favor pursuant to Rule 56.  Though both parties are movants, the parties' motions are addressed separately, and the Court construes disputed material facts accordingly.

[4] Elliott testifies that she did not begin working with or meet Williams until sometime in 1994, after the creation and release of the SISTA album *4 All the Sistas Around Da World*.

[5] Elliott disputes Williams' assertion that he is a co-author and owner of the Unpublished Songs and asserts a claim for a declaration of sole ownership of the lyrics, vocal arrangements, and melodies in the Unpublished Songs in the separate but related case of *Elliott v. Williams*, 21-cv-2290.

[6] Williams asserts no claims based on *Brand New*.

"*One in a Million*," on August 27, 1996, and for which Elliott received credit as a songwriter. *Heartbroken* was registered with the copyright office by multiple entities between November 4, 1996, and November 13, 2001, and each time Elliott received credit as an author. The *One in a Million* album sold eight million copies and was certified double platinum. Williams asserts that some of the Unpublished Songs — including one also titled "*Heartbroken*" — were used in the creation of the SISTA Songs and *Heartbroken* released by Aaliyah, but that he failed to receive credit on any of those other songs and never received related royalty payments. Elliott disputes this.

Between 1996 and 1998, Williams and Elliott were both credited on multiple songs and albums released by other artists; *to wit*: the song "*Round & Round*" by the group "*702*," released on October 8, 1996; Taral Hicks' song "*Ooh, ooh, baby*," released on September 16, 1997; and various songs on the "*Kima, Keisha, & Pam*" album by musical group "*Total*," released on October 17, 1998. Williams and Elliott attended a party together in 1997, where Aaliyah was also in attendance.

In February 2017, Williams was reviewing his collection of material with Constance Gary, his friend. Gary informed Williams that Williams' unpublished song *Heartbroken* was similar to the song *Heartbroken* released by Aaliyah on the *One in a Million* album. Williams contacted Elliott's lawyers to sell his purported rights to the Unpublished Songs. Williams also began reviewing Elliott's other work, which led to his discovery of the SISTA album *4 All the Sistas Around Da World*. Williams subsequently filed this lawsuit on November 14, 2018.

**LEGAL STANDARD**

Rule 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant

"believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Insurance Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*[7]

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon Int'l, Inc.*, 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with

---

[7] "It is especially important to hold the [parties'] to their burden" where there is an expansive record, for "judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 144 S. Ct. 1972, 1991 n.7 (2024).

the Rule 56 standard.'" *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations omitted).

**DISCUSSION**

In the Operative Complaint, Williams asserts that four of the Unpublished Songs he created with Elliott were used in four songs that were released by the musical group SISTA, and one song that was released by Aaliyah (collectively, the "Derivative Songs"). Williams seeks a declaration of joint ownership of the Derivative Songs and, further, asserts state law claims seeking damages related to the use of the Unpublished Songs in the creation of the Derivative Songs. Both Williams and Elliott move for summary judgment on all of Williams' claims.[8]

*Williams' Claims based on Heartbroken by Aaliyah*

*I. Williams' Co-Ownership claim based on the song Heartbroken released by Aaliyah (Count V)*

At Count V of the Operative Complaint, Williams seeks a declaration, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that the Unpublished Songs are "joint work" under the Copyright Act, 17 U.S.C. § 101 and, therefore, he is a co-owner of the Unpublished Songs and, in turn, entitled to royalties and credit on the Derivative Songs. In her motion, Elliott argues that Williams' co-ownership claim is barred by the applicable three-year statute of limitations.

Civil actions under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). An ownership claim accrues when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Kwan v. Schlein*, 634 F.3d 224,

---

[8] The parties' cross-motions also seek summary judgment on Elliott's ownership claims asserted in the consolidated case *Elliott v. Williams*, 21-cv-2290. Elliott's claims therein are not the subject of this Opinion and will be addressed separately.

228 (2d Cir. 2011) (internal quotation marks omitted).  "Deciding when [a plaintiff is] on inquiry notice of his authorship claim depends on two determinations:  1) when a cause of action first arose and 2) when he should have known that a cause of action had arisen."  *Brownstein v. Lindsay*, 742 F.3d 55, 69-70 (3d Cir. 2014).  To address the first question, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has adopted the "express repudiation" rule from the Second, Fifth, and Ninth Circuits.  *Id.* at 70.  To address the second question, "the discovery rule governs."  *Id.*

"[T]he express repudiation rule looks for evidence that a co-author has acted adversely to the plaintiff's status as a co-author."  *Id.*  Copyright registration alone "does not serve as repudiation of joint authorship because co-authors are not expected to investigate the copyright register for competing registrations."  *Id.* at 71 (citing *Gaiman v. McFalane*, 360 F.3d 644, 654-655 (7th Cir. 2004)).  Rather, express repudiation may be shown in several ways including, but not limited to, a claim of sole ownership, failure to give proper credit, and failure to pay royalties.  *See Everly v. Everly*, 958 F.3d 442, 453 (6th Cir. 2020) ("The party claiming sole authorship can repudiate the plaintiff's authorship (1) privately in direct communication with the plaintiff; (2) publicly by asserting sole authorship to the world and the plaintiff, including the listed credit on the published work; or (3) implicitly by receiving remuneration for the work to which the plaintiff is entitled." (internal citations omitted)); *Zuill v. Shanahan*, 80 F.3d 1366, 1368, 1371 (9th Cir. 1996) (holding that plaintiff's claim of co-ownership accrued when defendant expressly repudiated plaintiff's ownership right by claiming sole ownership of the copyright); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (holding that authorship rights were expressly repudiated when movie credits listed plaintiff's name far below others and as an "Islamic technical consultant" rather than as an author); *Kwan*, 634 F.3d at 229 (2d Cir. 2011) (holding ownership claim was time

6

barred because work, in which plaintiff did not receive credit as an author, had been published more than three years before plaintiff filed lawsuit); *Santa-Rosa v. Combo Recs.*, 471 F.3d 224, 228 (1st Cir. 2006) ("[W]e cannot think of a more plain and express repudiation of co-ownership than the fact that [defendant] openly, and quite notoriously, sold [plaintiff's] records without providing payment to him.").

Here, Williams argues that he never received royalties and was never credited in any capacity for the derivative song *Heartbroken* released by Aaliyah on August 27, 1996, though Elliott received credit as a songwriter. (ECF 269-22, Ex. S); (Elliott Decl., ECF 269-1, at ¶¶ 38-40); (Williams 2021 Dep., ECF 269-4, at 209:6-7). *Heartbroken* was registered with the copyright office by multiple entities between November 4, 1996, and November 13, 2001, and each time Elliott received credit as an author; Williams did not. (*See* ECF 269-20, Ex. Q; ECF 269-21, Ex. R; ECF 269-22, Ex. S). Meanwhile, Aaliyah's *One in a Million* album, featuring *Heartbroken*, sold eight million copies and was certified double platinum. (Williams' 2021 Dep., ECF 269-4, at 184:9-185:2, 191:4-9). Under these circumstances, this Court finds that Williams' rights as a co-author of the unpublished song *Heartbroken* were expressly repudiated when the song *Heartbroken* by Aaliyah was released in 1996 without Williams receiving credit. *See Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) (holding recording label had expressly repudiated plaintiff's ownership claims when the albums in question had "sold millions of copies since being released . . . [and] bear a copyright notice that lists [the recording label] as the sole copyright owner," when plaintiff was "an experienced sound engineer in the recording industry, [who] had received no royalties for the sale of the [a]lbums for fourteen years").

Having determined that Williams' alleged rights as co-owner were expressly repudiated, this Court must next determine when Williams knew or should have known that his cause of action

arose. Williams argues that the statute of limitations did not begin to run until February 2017 when he allegedly heard *Heartbroken* by Aaliyah for the first time. (Williams 2021 Dep., ECF 269-4, 71:14-72:3); (Williams Decl., ECF 270-1, ¶¶ 2-4). Williams also argues that he could not have previously discovered this infringement because in 1996 he removed himself from the music industry and did not follow the careers of any musical artists other than Prince. (Williams 2021 Dep., ECF 269-4, 106:8-107:20, 118:5-21).

However, as Elliott notes, a cause of action arises "when the plaintiff discovers or **should have discovered with 'due diligence'** that his rights had been violated." *Brownstein*, 742 F.3d at 70 (citing *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438 (3d Cir. 2009)) (emphasis added). "Whether [a] plaintiff[], in the exercise of reasonable diligence, should have known of the basis for their claims depends on whether they had 'sufficient information of possible wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity.'" *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006) (quoting *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002)). A defendant bears the burden of demonstrating such storm warnings and, if they do so, "the burden shifts to the plaintiff[] to show that they exercised reasonable due diligence and yet were unable to discover their injuries." *Id.* (quoting *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001)).

Here, Elliott argues that if *Heartbroken* by Aaliyah infringed on work co-owned by Williams, there were sufficient "storm warnings" to put Williams on notice. The Third Circuit has noted that in the aggregate, a "'mix of information' may constitute storm warnings," and that "storm warnings may take numerous forms." *Mathews*, 260 F.3d at 252. "The test for 'storm warnings' is an objective one, based on whether a 'reasonable [person] of ordinary intelligence would have discovered the information and recognized it as a storm warning.'" *In re NAHC, Inc.*

8

*Sec. Litig.*, 306 F.3d at 1325 (citing *Mathews*, 260 F.3d at 252); *see also Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1340 (Fed. Cir. 2011) ("The discovery rule tethers accrual of the cause . . . to the knowledge of the plaintiff or of a reasonable actor in the plaintiff's position. The discovery rule is therefore an inherently personal, plaintiff-specific one.").

Courts consider a song's widespread distribution and a plaintiff's role in the music industry when determining the existence of storm warnings. *See, e.g.*, *Cole v. Blackwell Fuller Music Publishing, LLC*, 2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018); *Santa-Rosa v. Combo Records*, 471 F.3d 224 (1st Cir. 2006). In *Cole*, the plaintiff was the road manager for Bob Marley and wrote the words and compositions of two songs recorded and performed by Marley. 2018 WL 4680989 at *1. The district court found the plaintiff to be on notice of his copyright claims, when he failed "to receive royalties, despite the widespread distribution and exploitation of the [songs at issue]" and the songs "being performed and made famous by Bob Marley," all while plaintiff was still working with Marley. *Id.* at *5. Similarly, in *Santa-Rosa v. Combo Records*, 471 F.3d 224 (1st Cir. 2006), the court found that when "at least 1,140 of the recordings in dispute were sold during the six month period . . . it [was] hard to believe that a singer [] would have been unaware that [defendant] was selling his recordings and thus claiming ownership over them." *Id.* at 228.

If Aaliyah's *Heartbroken* was a derivative of the purportedly co-owned unreleased *Heartbroken* song by Williams and Elliott, there were sufficient storm warnings to put Williams on inquiry notice. Williams was working in the music industry as a producer and owned his own home recording studio in the years leading up to and following the release of Aaliyah's *Heartbroken*. (Williams Resp. to Interrog. 7, ECF 269-7); (*See also* Williams' 2023 Dep., ECF 269-5, at 139:6-10). Importantly, the songs have the same title — *Heartbroken*. As noted,

9

Aaliyah's *One in a Million* album, featuring *Heartbroken*, sold eight million copies, and was certified double platinum. (Williams' 2021 Dep., ECF 269-4, at 184:9-185:2, 191:4-9). Williams knew that Elliott was on the *One in a Million* album, (*Id.* at 193:4-13), and had heard Elliott featured on one of Aaliyah's songs, (*Id.* at 194:3-6). Despite Williams' claim that he left the music industry and did not follow Elliott's music career after 1996, Williams attended a party with Elliott in 1997, where Aaliyah was present. (*Id.* at 99:15-100:2). Further, in 1997, after the release of Aaliyah's *One in a Million* album, Williams and Elliott worked together on a song for the musical group *En Vogue*. (Williams' 2023 Dep., ECF 269-5, at 112:21-113:14). Finally, Williams and Elliott were credited on different songs on the same album by musical group *Total*, released in 1998. (Elliott Decl., ECF 269-1, at ¶¶ 54-57). Considering the success of Aaliyah's *One in a Million album*, on which *Heartbroken* was released, and Williams' work in the music industry after the album's release, including with Elliott, a reasonable person in Williams' position would have been on notice of the use of his Unpublished Song in the purportedly derivative song *Heartbroken* by Aaliyah.

Having demonstrated sufficient storm warnings to put Williams on inquiry notice of the infringement of his ownership rights of *Heartbroken*, the burden shifts to Williams to show that he exercised reasonable due diligence, and that despite that due diligence, he was unable to discover the infringement. *See Benak*, 435 F.3d at 400. Williams offers no evidence to show an exercise of due diligence. Instead, Williams simply argues he had removed himself from the music industry and did not follow any musical careers other than that of Prince. (Williams' 2021 Dep., ECF 269-4, at 106:9-24). Willful actions, however, do not excuse a failure to exercise reasonable due diligence. *See Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1148-49 (N.D. Cal. 2007) ("It is unreasonable for a 'successful song writer and producer' . . . to commence a Yoga path only to

reemerge from electronic isolation twenty years later and thereafter commence suit for copyright infringement."). "Seeking to avoid the three-year statute of limitations on the basis of [] a vanishing act is unavailing." *Id.* As such, Williams' assertion that he could not have known about any ownership infringement related to *Heartbroken* because he removed himself from the music industry is without merit.

Accordingly, this Court finds that the three-year statute of limitations on Williams' co-ownership claim related to *Heartbroken* by Aaliyah, began to run when Aaliyah's *One in a Million* album was released in 1996, or at the latest, in the years following the release of the album, when the album reached widespread success, while Williams and Elliott were still working together. Williams commenced this action against Elliott on November 14, 2018, over twenty-two years after the release of *Heartbroken*. Under these circumstances, this Court further finds that Williams has failed to offer evidence that he exercised due diligence. As such, Williams' co-ownership claim based on the song *Heartbroken* released by Aaliyah is barred by the three-year statute of limitations. Accordingly, Elliott's motion for summary judgment is granted as to Williams' co-ownership claim based on Aaliyah's song *Heartbroken* (Count V).

*B. Williams' state law claims based on the co-ownership of Heartbroken*

Williams also asserts state law claims for breach of contract and fiduciary duty (Count I), unjust enrichment/quantum meruit (Count II), accounting of profits (Count III), and constructive trust (Count IV), premised on his alleged co-ownership of *Heartbroken*. Elliott argues these claims are also barred by their applicable statute of limitations.

In Pennsylvania, the statute of limitations for a breach of contract action is four years, whether the contract is in writing or verbal, 42 Pa. Cons. Stat. § 5525(a), and "accrues at the time

of breach." *Packer Soc'y Hill Travel Agency, Inc. v. Presbyterian Univ. of Penn. Med. Ctr.*, 635 A.2d 649, 652 (Pa. Super. Ct. 1993).

A claim for breach of fiduciary duty is governed by a two-year limitations period. *See* 42 Pa. Cons. Stat. § 5524(7). "Generally, the statute of limitations begins to run on a breach of fiduciary duty claim when the trustee openly and unequivocally violates his duties." *Langman v. Keystone Nat'l Bank & Tr. Co.*, 672 F. Supp. 2d 691, 702 (E.D. Pa. 2009) (applying Pennsylvania law).

The statute of limitations for unjust enrichment and quantum meruit claims is four years. 42 Pa. Cons. Stat. § 5525(a)(4). An unjust enrichment claim accrues "when the defendant receives and retains benefits," *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (internal quotation marks omitted), and quantum meruit claims accrue on "the date on which the relationship between the parties is terminated," *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997).

A "six-year limitation governs an action for an accounting in equity." *Abbdulaziz v. City of Phila.*, 2001 WL 1257441, at *4 (E.D. Pa. Oct. 18, 2001), *aff'd sub nom. Abdulaziz v. City of Phila.*, 47 F. App'x 131 (3d Cir. 2002). "An action for an accounting accrues as of the date the funds were allegedly diverted away from the plaintiff." *Id.* (citing *Ebbert v. Plymouth Oil Co.*, 34 A.2d 493, 496 (Pa. 1943)).

"A constructive trust is bound by a five year statute of limitations," that begins to run at "the time the grantee has breached the promise to reconvey or until the time the grantor should reasonably have known of the grantee's wrongful retention of the property." *PR Liquidating Tr. by & through McCullough v. W. Land Servs., Inc.*, 2021 WL 1197626, at *3 (W.D. Pa. Mar. 30, 2021) (quoting *Truver v. Kennedy*, 229 A.2d 468, 475 (Pa. 1967)); *see also* 42 Pa. C.S.A. § 5526(3)

12

("The following actions and proceedings must be commenced within five years . . . [a]n action to enforce any equity or redemption or any implied or resulting trust as to real property.").

Here, Williams' breach of contract, breach of fiduciary duty, unjust enrichment, accounting, and constructive trust claims all accrued at the time of the release of Aaliyah's *Heartbroken* in August 1996. Williams asserts that "Elliott acted without [Williams'] knowledge and/or failed to share in all benefits conferred to her by the recreation, transfer, assignment, and or sale of the [the unpublished *Heartbroken*] to a third party." (Am. Compl., ECF 91, at ¶ 49). Considering the evidence presented and arguments made, Elliott allegedly breached her contract, violated her fiduciary duties, "received and retained benefits," "diverted" funds away from Williams, and breached the "promise to reconvey" property to Williams when she shared or sold the rights to *Heartbroken* to Aaliyah without Williams' permission or appropriate compensation. Further, Williams testifies that his working relationship with Elliott ended and they "parted ways" in 1996. (Williams 2021 Dep., ECF 269-4, at 249:2-5).[9] Accordingly, the statute of limitations for each state law claim began to run in 1996. Thus, Williams' breach of fiduciary duty claim lapsed in 1998. Williams' breach of contract, unjust enrichment, and quantum meruit claims lapsed in 2000. Williams' constructive trust claim lapsed in 2001 and his claim for accounting lapsed in 2002. Given Williams did not file the underlying civil action until 2018, his state law claims premised on Aaliyah's release of *Heartbroken* are barred by the applicable statutes of limitations, absent tolling.

---

[9]  Elliott testifies that the last time she worked with Williams was in 1998, when they were both credited on the same song, *Speakers Blow* by the group *702*. (EFC 269-7, at Interrog. 12); (Williams 2021 Dep., ECF 269-4, at 27:12-17). Whether their relationship ended in 1996, as Williams asserts, or 1998 when Williams and Elliott were last credited on a song together, the statute of limitations on Williams' quantum meruit claim expired in 2002 at the latest.

To refute Elliott's statute of limitations arguments on his state law claims, Williams relies on the discovery rule. "The discovery rule tolls the statute of limitations when a plaintiff, despite the exercise of due diligence, is unable to know of the existence of the injury and its cause." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991). However, as noted, Williams' argument for tolling under the discovery rule fails because a reasonable person in his position should have discovered these injuries with the exercise of due diligence. *See supra* discussion at pp. 10-11. Additionally, Williams offers no evidence of his exercise of due diligence. *Gleason v. Borough of Moosic*, 15 A.3d 479, 485 (Pa. 2011) ("[T]he party asserting application of the discovery rule bears the burden of proof."). As such, Elliott's state law claims premised on the song *Heartbroken* are time-barred. Accordingly, Elliott's motion for summary judgment as to Williams' state law claims that are premised on the song *Heartbroken* is granted.

As noted, Williams also moved for summary judgment on his claims premised on the song *Heartbroken*. Given this Court's determination that all of Williams' claims premised on Aaliyah's *Heartbroken* are barred by the statute of limitations, Williams' motion for summary judgment as to those same claims is necessarily denied.

### *Williams' Claims based on the SISTA Songs*

In the Operative Complaint, Williams asserts similar declaratory judgment and state law claims based on four songs on SISTA's album *4 All the Sistas Around Da World — Sweat You Down*, *Secret Admirer*, *I Wanna Know*, and *I Wanna Be With U*. Elliott argues that this Court should enter summary judgment on her behalf on these claims because: 1) Williams has no co-ownership right to the SISTA Songs because they were created and released before Elliott started working with him; and 2) all claims premised on the SISTA Songs are precluded by the applicable statutes of limitations.

Specifically, Elliott argues that Williams does not have an ownership right in the SISTA Songs because Elliott "did not even know of or meet Williams until *after the production* on the '*Sista*' album entitled *4 All the Sistas Around Da World*," and after the album "was completed and the album was publicly released by Elektra Records in 1994." (Elliott Decl., ECF 269-1, at ¶ 12). Williams, however, testified during his deposition that he and Elliott worked together between 1993 and 1996, (Williams' 2021 Dep., ECF 269-4, 283:22-284:3), and that he contributed a combination of lyrics, harmonies, music, and melodies to the Unpublished Songs of which the SISTA Songs are derivatives. (Williams' 2023 Dep., ECF 269-5, 50:5-11, 51:14-20, 60:17-22, 63:16-19). Considering these conflicting arguments and evidence, a genuine issue of material fact exists as to whether Williams and Elliott were working together at the time of the production of the SISTA album *4 All the Sistas Around Da World* and whether Williams' contributions to the Unpublished Songs were used on derivative songs released on the album. Accordingly, at this stage of the litigation Elliott's first argument is rejected.

Elliott also argues that Williams' claims based on the SISTA Songs are barred by the applicable statutes of limitations.[10] As noted, a copyright claim for joint ownership must be brought "within three years after the claim accrued." 17 U.S.C. § 507(b). Such claim accrues when a plaintiff is on inquiry notice of his or her claim, *i.e.*, when: 1) a plaintiff's ownership rights are expressly repudiated, and 2) when the plaintiff should have known that a cause of action had arisen. *Brownstein*, 742 F.3d at 69-70. "[T]he express repudiation rule looks for evidence that a co-author has acted adversely to the plaintiff's status as a co-author." *Id.* at 70. Whether a plaintiff

---

[10] Notably, Elliott only mentions the SISTA songs in conclusory statements contained in the statute of limitations section of her memorandum of law. (Elliott Mot., ECF 269, at p.p. 21, 24, 26-27). The majority of her argument as to the SISTA songs is found in footnotes and relates to her assertion that the SISTA songs were released prior to her working with Williams. (*See* Elliott Mot., ECF 269, at p. 25 n.9); (s*ee also* Elliott Resp., ECF 275, at p. 5 n.5, p. 8 n.6).

15

should have known he or she had a cause of action depends on whether there was "sufficient information of possible wrongdoing to place them on inquiry notice or to excite storm warnings of culpable activity." *Benak*, 435 F.3d at 400 (internal quotation marks omitted).

Here, Elliott argues that Williams' co-ownership claim relating to the SISTA Songs accrued when the album was released in 1994 and, thus, any such claim needed to be filed before the end of 1997. In response, Williams argues that his rights were never expressly repudiated and that he could not have known about his cause of action because the SISTA album was shelved after its release, until it was re-released in May 2017. (Williams' 2021 Dep., ECF 269-4, 300:1-7), (ECF 272-3, at p.1). To meet her burden with respect to express repudiation and storm warnings, Elliott provides no evidence beyond the assertion in her declaration that the SISTA album was publicly released in 1994 and a document reflecting the 1995 copyright registration for the single from the album, *Brand New* — a song on which none of Williams' claims are premised. (Elliott Decl., ECF 269-1, at ¶ 10; ECF 269-23, Ex. T). Notably, Elliott does not provide evidence of the SISTA Songs at issue or the album as a whole being registered with the copyright office or evidence of the widespread distribution of the relevant SISTA Songs or album. Regardless, as noted, copyright registration alone does not serve as repudiation of joint authorship. *See Brownstein*, 742 F.3d at 71. This Court finds that Elliott has not met her burden of express repudiation or storm warnings sufficient to show when Williams' SISTA Songs claim accrued. *See Mathews*, 260 F.3d at 252 ("[T]he burden is on the defendant to show the existence of 'storm warnings.'"). Williams, on the other hand, offers evidence that the SISTA album *4 All the Sistas Around Da World* was shelved and re-released in May 2017. Williams commenced the underlying action on November 14, 2018. Based on the evidence presented at this stage of the litigation,

Williams' copyright claim relating to the SISTA Songs is not barred by the three-year statute of limitations.

Similarly, Elliott has not met her burden with respect to the statute of limitations on Williams' state law claims premised on the SISTA Songs. Williams' breach of contract, breach of fiduciary duty, unjust enrichment, quantum meruit, accounting, and constructive trust claims are subject to statues of limitations between two and six years. *See supra* discussion pp. 11-13. These claims, however, are subject to the discovery rule. As noted, Williams offers evidence that the SISTA album *4 All the Sistas Around Da World* was shelved after its release in 1994 and not re-released until 2017. As such, a genuine issue of material facts exists as to whether a reasonable person in Williams' position would have been able to discover the alleged causes of action prior to the album's re-release in 2017. Accordingly, Elliott's motion for summary judgment as to Williams' state law claims premised on the SISTA Songs is denied.

Williams also moves for summary judgment on all of his claims premised on the SISTA Songs. As noted, a genuine issue of material fact exists as to the co-authorship of the Unpublished Songs allegedly used in the creation of the SISTA Songs. As such, Williams' motion for summary judgment is denied as to his claim for declaratory judgment of copyright ownership of the SISTA Songs (Count V). As for Williams' state law claims premised on the SISTA Songs (Counts I-IV) — breach of contract and fiduciary duty, unjust enrichment/quantum meruit, accounting of profits, and constructive trust — he points to no record evidence to support any of the elements of each claim, therefore, failing to meet his summary judgment burden. (*See* Williams Mot., ECF 270, at pp. 10-12). Accordingly, Williams' motion for summary judgment as to his state law claims premised on the SISTA Songs is also denied.

**CONCLUSION**

For the reasons set forth above, (1) Elliott's motion for summary judgment is granted as to all of Williams' claims premised on Aaliyah's *Heartbroken*; (2) Elliott's motion for summary judgment is denied as to Williams' claims premised on the SISTA Songs; and (3) Williams' motion for summary judgment is denied as it pertains to his claims.


*NITZA I. QUIÑONES ALEJANDRO*, J.